**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 17-322-DLB**

**JOHN JOSE WATFORD**                                                              **PETITIONER**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**J. RAY ORMOND, Warden**                                                   **RESPONDENT**

**\*\*\* \*\*\* \*\*\* \*\*\***

Inmate John Jose Watford filed an original and two amended petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the enhancement of his federal sentence.  (Docs. # 1, # 11, and # 13).  The Court previously determined that Watford's claims were not cognizable in habeas and denied the petition upon initial review.  (Doc. # 15).  On appeal, the Sixth Circuit granted the warden's motion to remand the case for reconsideration.  *See* (Doc. # 31).  Upon remand the Court appointed counsel for Watford and ordered further briefing.  (Doc. # 33).  That briefing has been completed, (Docs. # 39, # 43, and # 46), and this matter is therefore ripe for decision.

**I.**

In September 1997 Watford was convicted on federal charges of committing three armed bank robberies in Indiana in April and May of that year.  (Doc. # 41 at 3-4).  The presentence report concluded that Watford qualified as a career offender pursuant to U.S.S.G. § 4B1.1 (Nov. 1, 1997) because he had two prior convictions for a "crime of violence."  Specifically, Watford had a 1990 conviction in Florida for burglary of a dwelling pursuant to Fla. Stat. § 810.02(3) and a 1994 conviction in Pennsylvania for aggravated

assault pursuant to 18 Pa. Cons. Stat. § 2702(a)(4).  (Doc. # 41 at 9-13).  As a result, Watford faced an imprisonment range of 262 to 327 months pursuant to the Sentencing Guidelines for his three convictions under 18 U.S.C. § 2113(d).  In February 1998, the trial court sentenced Watford to 262 months imprisonment for that offense.  That nearly 22-year sentence was at the very bottom of the applicable guidelines range[1] and below the 25-year statutory maximum for a single conviction (let alone three) under § 2113(d).[2] When added to a mandatory 540-month sentence for his three separate convictions under 18 U.S.C. § 924(c), Watford received a combined 802-month sentence.  *United States v. Watford*, No. 3: 97-CR-26(2)-RLM (N.D. Ind. 1997) (Docs. # 27, # 61, # 99, and # 101 therein).

In his original § 2241 petition before this Court, Watford claimed entitlement to relief under *Mathis v. United States*, 136 S. Ct. 2243 (2016).  He asserted that the two predicate offenses used to label him a career offender "sweep categorically broader than the federal generic definition" because (i) Florida's burglary statute covers not only burglary of a building but of its curtilage, and (ii) Pennsylvania's aggravated assault

---

[1]     The trial court applied the November 1997 Guidelines.  *See* U.S.S.G. § 1B1.11(a) (Nov. 1, 1997) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").

[2]     The statute in effect when Watford committed his crime provided that "[w]hoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this Section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both." 18 U.S.C. § 2113(d) (Oct. 11, 1996).  Watford's below-statutory-maximum sentence should resolve his latest request for habeas relief.  *United States v. Peterman*, 249 F.3d 458, 462 (6th Cir. 2001) ("Courts have generally declined to collaterally review sentences that fall within the statutory maximum."); *see also Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1280 (11th Cir. 2013) (noting that *Peterman* denied the availability of relief under § 2241 "for sentencing claims alleging that the district court misapplied the guidelines provisions but imposed a sentence within the statutory maximum penalty[.]").

statute criminalizes not just intentional but reckless conduct as well.  (Doc. # 1 at 5) (cleaned up).  Watford's first and second amended petitions referenced *Begay v. United States*, 553 U.S. 137 (2008) and *Descamps v. United States*, 570 U.S. 254 (2013), but did not argue additional grounds for relief beyond the overbreadth argument he made in his original petition.  *See* (Docs. # 11 at 3, 5 and # 13 at 5).[3]

Upon initial review of his petition, the Court first concluded that while Watford referenced *Descamps* and *Mathis*, he was actually asserting overbreadth claims under *Taylor v. United States*, 495 U.S. 575 (1990).  Because Watford did not actually make a claim under *Mathis* or *Descamps* by asserting that the trial court had incorrectly treated the Florida and Pennsylvania statutes as divisible, he could not pursue his claims under § 2241.  (Doc. # 15 at 5).  In the alternative, the Court concluded that because *Mathis* and *Descamps* did not interpret the statutes under which Watford was convicted, but instead merely clarified the judicially-crafted process by which his prior offenses were evaluated as possible predicate offenses for purposes of enhancing his sentence, under *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016), Watford could not invoke those decisions as grounds for relief from his sentence in a § 2241 petition.  (Doc. # 15 at 4-5, 5-6).[4]

---

[3]      Watford has made these exact same arguments many times before, citing the very same decisions he cited before the Sixth Circuit and this Court.  *See In re: John J. Watford*, No. 13-3806 (7th Cir. 2013) (Doc. # 1 therein); *In re: John J. Watford*, No. 16-1987 (7th Cir. 2016) (Doc. # 1 therein).

[4]      The Court also rejected Watford's reliance upon *Begay v. United States*, 553 U.S. 137 (2008) to challenge his aggravated assault conviction because *Begay* was effectively abrogated by the Supreme Court in *Johnson v. United States*, 576 U.S. 591 (2015) ("*Johnson II*").  (Doc. # 15 at 4).  On appeal, neither party nor the Sixth Circuit took exception to that holding.  In any event *Begay*, which held that a New Mexico conviction for driving under the influence of alcohol is not a violent felony under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA") has no bearing upon Watford's Pennsylvania conviction for aggravated assault for purposes of § 4B1.1 of the Sentencing Guidelines.  *See Jenkins v. United States*, 450 F. App'x 103, 105 (3d Cir. 2011).

Watford appealed to the United States Court of Appeals for the Sixth Circuit.  (Doc. # 18).  In his *pro se* appellate brief, as well as two supplements, Watford essentially re-asserted the same grounds for relief under *Taylor*.  *Watford v. Ormond*, No. 18-5328 (6th Cir. 2018) (Docs. # 15, # 16, and # 17 therein) (from now on, "on appeal").  Upon its own motion the Sixth Circuit appointed counsel to represent Watford.  (Doc. # 21 (on appeal)).  In his counseled brief, Watford did not mention this Court's first ground for decision and challenged only the second.  *See* (Doc. # 30 (on appeal) at 22).  And like Watford's *pro se* petitions in this Court and the *pro se* brief he filed in the Sixth Circuit, his counseled brief mentioned *Mathis* and *Descamps*, but argued only that the state statutes under which he was convicted were broader than their generic counterparts, a contention that has been available to Watford since *Taylor* was decided in 1990.  (Doc. # 30 (on appeal) at 40-42).

In response, the warden filed a motion to remand the case.  Like Watford, the warden omitted any reference to the Court's first basis for decision.  With respect to the second, the warden conceded without explanation that Watford's claim satisfied the *Hill* criteria.  (Doc. # 31 (on appeal)).  The Sixth Circuit granted that motion, stating:

> Ormond concedes that under *Hill v. Masters*, 836 F.3d 591, 592 (6th Cir. 2016), a prisoner who otherwise meets *Hill's* requirements may rely on *Descamps v. United States*, 570 U.S. 254 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016), to challenge his career offender sentence enhancement in a § 2241 petition.  We agree with Ormond that the district court should consider in the first instance whether Watford can demonstrate that his prior convictions no longer qualify as crimes of violence.  *The district court's consideration on remand will be limited to Watford's 1990 Florida conviction for burglary of a dwelling and his 1994 Pennsylvania conviction for aggravated assault.*[5] (emphasis added)

---

[5]     By limiting the prior convictions which may be considered upon remand, the Sixth Circuit implicitly rejected the warden's request that this Court be permitted to review all of Watford's numerous prior convictions to determine if at least two of them qualified as predicate offenses. *See* (Doc. # 34 (on appeal) at 1-2).

(Doc. # 35-2 (on appeal) at 1).   Following remand, the Court appointed counsel to represent Watford in these proceedings.   *See* (Doc. # 33; docket entries for July 31, 2019).   The parties have briefed the issues upon remand.   (Docs. # 39, # 43, and # 46).

## II.

As a preliminary matter, the Court must ascertain the scope of the Sixth Circuit's remand, as its Order is not entirely clear on the point.   In the first sentence of its Order, the Sixth Circuit notes that the warden conceded that *Mathis* and *Descamps* satisfy *Hill's* cognizability requirements.   Notably, however, the Sixth Circuit neither expressly accepted that concession nor directed this Court to do so.   Instead, the second and third

---

But in other instances, the Sixth Circuit has held that a § 2241 petitioner is not entitled to relief where he has sufficient predicates even if the challenged conviction is not counted.   *Cf. White v. United States*, No. 17-6517, 2018 WL 6822434, at *2 (6th Cir. Aug. 21, 2018) (affirming the denial of relief under § 2241 where the petitioner "has a sufficient number of predicate offenses - even without the burglary conviction - to qualify as a career criminal.").   After all, "[a] prisoner who collaterally attacks a portion of a judgment reopens the entire judgment 'and cannot selectively craft the manner in which the court corrects that judgment.'"   *United States v. Cox*, 766 F. App'x 423, 426 (8th Cir. 2019) (*quoting United States v. Alton*, 120 F.3d 114, 116 (8th Cir. 1997)), *vacated and remanded on other grounds*, 140 S. Ct. 396 (2019).   And in an analogous context, the Supreme Court long ago explained that:

> It is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency.   In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before our decision in *Bailey*.   In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.

*Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citations omitted).   Notably, the Sixth Circuit has acknowledged that *Bousley* is the foundation upon which its understanding of the scope of the savings clause is built.   *Martin v. Perez*, 319 F.3d 799, 804 (6th Cir. 2003).   Since *Bousley* holds that the entire record may be reviewed in the context of a collateral attack upon a prior conviction, there appears to be no principled basis upon which to artificially constrain the record which may be reviewed in collateral proceedings challenging a sentence under § 2241.

sentences of the Sixth Circuit's Order merely direct this Court to make the substantive determination whether Watford's prior convictions are for "crimes of violence," something it can do independently of the procedural issue.

The Court readily acknowledges that the Sixth Circuit's Order is at least amenable to a more restrictive reading regarding the scope of remand.   However, two considerations counsel against deciding only the substantive issue without addressing the threshold procedural one.  First, as noted above both Watford and the warden failed to recognize the Court's first basis for denying Watford's petition: that his claims were not (and still are not) in fact based upon either *Mathis* or *Descamps*.  *See* (Doc. # 15 at 4-5). As a result, neither party informed the Sixth Circuit of that fact.  Indeed, that oversight appears to have prompted the warden's motion to remand and caused the Sixth Circuit to grant it.   Second, the Court may address the cognizability issue in addition to, and entirely independently of, the merits determination.  Therefore, deciding that issue should not hamper appellate review of the merits determination even if the Sixth Circuit later determines that the cognizability question was intended to be outside the scope of remand.  The Court will therefore discuss both issues.

## A.

The Court previously held, contrary to the prevailing view, that neither *Descamps* nor *Mathis* qualify as a "case of statutory interpretation" as that phrase is used in determining whether a petitioner may seek relief under § 2241 via the "savings clause" found in 28 U.S.C. § 2255(e).  (Doc. # 15 at 4-6).  At bottom, that conclusion is grounded upon two considerations.  First, since the Supreme Court's decisions in *Bailey v. United States*, 516 U.S. 137 (1995) and *Bousley v. United States*, 523 U.S. 614, 623-340 (1998),

the phrase "case of statutory interpretation" has referred to a Supreme Court decision that construes the petitioner's federal statute of conviction more narrowly than had previously been understood.   Neither *Mathis* nor *Descamps* do that.   Second, the categorical approach as established in *Taylor* (and as clarified and expounded in its progeny) is not derived from an interpretation of a statute.   Instead, it is a methodology created by the federal courts, not Congress, and it is grounded in pragmatic considerations, not the construction of statutory terms.

**1.**

In *Bailey*, the Supreme Court held that a defendant does not "use" a firearm in connection with a drug trafficking offense as required to violate 18 U.S.C. § 924(c) unless he "actively employs" it during the offense.  516 U.S. at 142-43.  In doing so, the Supreme Court rejected a far more expansive reading of the statute that had been applied by several federal courts of appeal that had permitted a § 924(c) conviction to stand if the firearm was merely nearby the defendant and available for his use.  *Id*. at 143-50.  Three years later, in *Bousley* the Supreme Court held that a defendant convicted under § 924(c) could file a post-conviction motion under 28 U.S.C. § 2255 to assert a *Bailey* challenge to his conviction, assuming he could overcome any procedural default.  523 U.S. at 618-22.

While *Bousley* created an opening for petitioners to use § 2255 to assert a claim based upon a Supreme Court decision of statutory interpretation, it applied only to motions filed before the April 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996).  Before AEDPA, a federal inmate convicted under § 924(c) could seek relief from a conviction by filing a

motion under the first unnumbered paragraph of 28 U.S.C. § 2255 (June 25, 1948), arguing that she had "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States."  AEDPA restricted § 2255 motions in two respects.  First, it added a one-year limitations period, and second, it limited second or successive motions to claims based upon newly-discovered evidence or retroactively applicable Supreme Court decisions of constitutional law.  See 28 U.S.C. § 2255 (1996).  *Bailey*, and other cases of statutory interpretation, fall outside of either category.  *Cf. In re: Dorsainvil*, 119 F.3d 245, 247-48 (3d Cir. 1997).  Therefore, defendants who had already filed an initial § 2255 motion lacked *any* available path to seek relief under *Bailey* via a § 2255 motion.

But AEDPA did not implicitly repeal § 2241, *Felker v. Turpin*, 518 U.S. 651, 660-62 (1996), and *Bailey* error (if established) would indicate that the petitioner was actually innocent of his § 924(c) offense, *see Bousley*, 523 U.S. at 620 ("[D]ecisions of this Court holding that a substantive federal criminal statute does not reach certain conduct . . . necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal.'") (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).  Several federal appeals courts, therefore, held that where AEDPA barred access to § 2255 to assert a statutory claim of actual innocence, the savings clause of § 2255 permitted resort to § 2241 to assert such a claim.  *See Dorsainvil*, 119 F.3d at 250-51; *Triestman v. United States*, 124 F.3d 361, 373-78 (2d Cir. 1997); *In re Davenport*, 147 F.3d 605, 608-10 (7th Cir.1998).  The Sixth Circuit would later follow suit. *Charles v. Chandler*, 180 F.3d 753, 756-58 (6th Cir. 1999); *Martin v. Perez*, 319 F.3d 799 (6th Cir. 2003).

In the years following these decisions, most federal courts of appeal adhered to this approach,[6] permitting resort to § 2241 only for claims based upon Supreme Court decisions which more narrowly interpreted the scope of conduct proscribed by federal criminal statutes. *Cf. Martin*, 319 F.3d at 804-05 (holding that a § 2241 petition may be used to assert a claim under *Jones v. United States*, 529 U.S. 848 (2000), which more narrowly interpreted the federal arson statute to cover only buildings used in interstate commerce); *Wooten v. Cauley*, 677 F.3d 303, 307-09 (6th Cir. 2012) (holding that a § 2241 petition may be used to assert a claim under *United States v. Santos*, 553 U.S. 507 (2008), which more narrowly defined the term "proceeds" in the federal money-laundering statute); *Harrington v. Ormond*, 900 F.3d 246 (6th Cir. 2018) (holding that a § 2241 petition may be used to assert a claim under *United States v. Burrage*, 571 U.S. 204 (2018), which more narrowly interpreted 21 U.S.C. § 841(b)(1) to require the jury to find that drugs distributed by the defendant were the "but for" cause of a victim's death).

This precedent permitted attacks upon federal convictions, but the federal courts consistently scoffed at the notion that a prisoner could challenge her federal sentence via § 2241. The courts noted that a prisoner's claim that:

> he is indeed innocent of the "armed career criminal" offense . . . would make an arbitrary hole in the [AEDPA] . . . For him to be able to file successive motions for postconviction relief, but not someone who had been denied all right to counsel or had a confession beaten out of him but was unable to argue that he had in fact been innocent of the crimes of which he had been convicted, would correspond to no intelligible concept of either legal or substantive justice. And the privileged status for which Davenport contends would if accepted allow him to file not just one successive appeal; a prisoner who was claiming to be innocent could by the logic of Davenport's argument

---

[6]    Some would later adopt a substantially more restrictive reading of the scope of the savings clause. *Cf. Prost v. Anderson*, 636 F.3d 578, 583-88 (10th Cir. 2011); *McCarthan v. Director of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076, 1079-80 (11th Cir. 2017).

file an indefinite number of successive motions for postconviction relief - could indeed file an identical new motion every day of his incarceration.

*Davenport*, 147 F.3d 609-10.  *See also Gilbert v. United States*, 640 F.3d 1293, 1310 (11th Cir. 2011) ("If the savings clause operates to allow attacks on old sentences that were lengthened by enhancements that later decisions have called into doubt, there is no reason it would not also operate to do the same with any other guidelines calculation error."); *Darden v. Stephens*, 426 F. App'x 173, 174 (4th Cir. 2011) (noting that "our cases have confined the § 2255 savings clause to instances of actual innocence of the underlying offense of conviction, and because the only case from a sister circuit holding to the contrary has been vacated [referring to *Gilbert v. United States*, 609 F.3d 1159 (11th Cir.), *vacated*, 625 F.3d 716 (11th Cir. 2010)], we decline to extend the reach of § 2255's savings clause" to a sentencing claim predicated upon *Chambers v. United States*, 555 U.S. 122 (2009)[7]); *McNeal v. Martin*, 424 F. App'x 322, 323 (5th Cir. 2011) (same); *Sorrell v. Bledsoe*, 437 F. App'x 94, 96 (3d Cir. 2011) (same).

Nonetheless, in the ensuing years and coincident with the increasing perception among certain courts that federal sentences were excessive, some courts (although by no means all) reversed course and held that a prisoner could, in fact, invoke § 2241 to challenge a sentence under certain circumstances.[8]  *Cf. Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013); *Hill*, 836 F.3d at 595, 599-600.

---

[7]      *Chambers*, as well as a number of other decisions discussing the residual clause of the ACCA, were later abrogated at least in part by *Johnson II*'s invalidation of that clause.  Having noted that fact once, the Court will not repeat it elsewhere unless context requires it.

[8]      As the *Gilbert* court would later put it, "what is a judge to do when he or she thinks Congress was not generous enough when it gave prisoners the right to attack collaterally their sentences? The dissents offer an answer: Help Congress and the President with their work . . . . This grandiose conception of judicial supremacy would threaten the separation of powers and undermine the rule of law."  640 F.3d at 1327 (Pryor, J., concurring).

Of course, when a § 2241 petition challenges a sentence, the federal statute of conviction is not at issue.  Instead, the pertinent Supreme Court "cases of statutory interpretation" are those which interpret a state or federal criminal offense that was used as a predicate to enhance the federal sentence.  *Cf. James v. United States*, 550 U.S. 192 (2007) (Florida offense of attempted burglary is a violent felony under the ACCA); *Chambers v. United States*, 555 U.S. 122 (2009) (Illinois offense of failing to report to a penal institution is not a violent felony under the ACCA); *Johnson v. United States*, 559 U.S. 133 (2010) (Florida offense of battery is not a violent felony under the ACCA).  In those circuits permitting sentencing challenges via § 2241, including the Sixth Circuit, these are the sorts of "statutory interpretation" cases which properly qualify as providing a vehicle for relief via § 2241.  *Cf. Lester v. Flournoy*, 909 F.3d 708, 711-14 (4th Cir. 2018) (permitting claim of error under *Chambers* to be pursued under § 2241).

*Descamps* and *Mathis* are thus foundationally different from the Supreme Court cases described above.  In those cases, the Court neither interpreted the terms of a federal criminal statute to determine the scope of the conduct proscribed, nor did the Court evaluate whether a particular prior state or federal offense qualified as a sentence-enhancing predicate under the ACCA or U.S.S.G. § 4B1.1.  In *Descamps*, the Supreme Court reiterated its holdings in prior cases that when undertaking the categorical approach, the federal district court may only refer to the kinds of extrinsic materials identified in *Shepard v. United States*, 544 U.S. 13 (2005) when the underlying statute of conviction is divisible, and even then only to ascertain the elements of the offense of conviction.  570 U.S. at 260-61.  For its part, *Mathis* reinforced only that a statute is not "divisible" merely because it describes more than one factual means to commit a single

crime; instead, a statute is divisible only if it creates several different crimes by defining alternative elements.  136 S. Ct. at 2248-50.  These cases, therefore, only expounded upon a judicially-created *procedure* for evaluating predicate offenses.  *Descamps*, 570 U.S. at 269 ("Our modified categorical approach merely assists the sentencing court in identifying the defendant's crime of conviction[.]"); *Mathis*, 136 S. Ct. at 2249 (describing the modified categorical approach as "a way of figuring out which of the alternative elements listed . . . was integral to the defendant's conviction (that is, which was necessarily found or admitted).").  The Sixth Circuit and other federal courts of appeal have viewed these decisions through that lens.  *See Hill*, 836 F.3d at 595 ("In [*Descamps*], the Supreme Court clarified the correct approach for determining whether state-law offenses qualify as 'violent felonies' for the purpose of a sentence enhancement under the [ACCA].").

In other words, *Descamps* and *Mathis* are not substantive cases, but procedural ones, describing only the proper manner for a federal trial court to reach a sentencing determination.  Unlike decisions such as *Burrage* or *Chambers*, *Descamps* and *Mathis* did not have the effect of making clear that a particular petitioner's conviction was predicated upon conduct that the law does not make criminal, a traditionally-necessary condition for the availability of habeas relief through the avenue § 2241 provides.  *See Schriro v. Summerlin*, 542 U.S. 348, 353 (2004) (noting that procedural rules, unlike substantive ones, "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.").  Instead, the categorical approach is merely a procedural rule because it "regulate[s] only the manner of

determining the defendant's culpability."   542 U.S. at 353; *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014) ("*Descamps* addressed permissible uses of court documents in deciding whether a defendant's prior conviction triggers a mandatory minimum."); *Allen v. Ives*, 950 F.3d 1184, 1197-98 (9th Cir. 2020) (Callahan, J., dissenting) ("*Descamps* and *Mathis* merely instructed sentencing courts how to apply the 'categorical approach' set forth in [*Taylor*], in determining whether a defendant's prior state conviction meets a predicate offense under the ACCA.  In that way, *Descamps* and *Mathis* 'regulate[d] only the manner of determining' a defendant's qualification for a sentencing enhancement  . . . .").

Cases like *Mathis* therefore have more in common with claims under *Batson v. Kentucky*, 476 U.S. 79 (1986) (restricting the use of peremptory strikes) or *Strickland v. Washington*, 466 U.S. 668 (1984) (requiring the effective assistance of counsel), types of claims that have gained no purchase in § 2241 proceedings.  *Cf. Mallard v. United States*, 82 F. App'x 151 (6th Cir. 2003) (concluding that *Batson* and *Strickland* claims, which relate to trial process, are not cognizable in a § 2241 petition); *see also Albarran v. United States*, 431 F. App'x 71 (3d Cir. 2011) (concluding that § 2241 petition is not the proper vehicle to assert a claim under *Brady v. Maryland*, 373 U.S. 83 (1965) (requiring the prosecution to disclose exculpatory evidence) or that the trial court misapplied sentencing factors under 18 U.S.C. § 3553(a)).  *Mathis* and *Descamps* are thus dissimilar in essential ways from cases historically considered to qualify as "cases of statutory interpretation"— as that phrase developed in the wake of *Bailey* and *Bousley*—within the meaning of *Hill*.

**2.**

A second reason supports the conclusion that the categorical approach at issue in both cases does not itself wear the "statutory interpretation" label neatly. The Supreme Court contrived the categorical approach in *Taylor* in 1990. Succinctly stated, under the categorical approach when comparing a prior conviction against its generic counterpart, courts "look only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." 495 U.S. at 600.

The *Taylor* Court articulated three justifications for its new rule. First, the Supreme Court tenuously asserted that "the language of § 924(e) *generally supports the inference* that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Taylor*, 495 U.S. at 600 (emphasis added).[9] The textual basis for that assertion was, in its entirety, that § 924(e)(1) refers to prior "convictions" and not to prior "offenses." *Id*. Second, from its extensive review and dissection of the ACCA's legislative history, *see id*. at 581-90, the Court drew a negative inference from the absence of comments supporting a more fact-based approach that Congress intended an elements-based approach instead. *Id*. at 601. Third, the Court noted that the alternative, a fact-driven inquiry, would frequently require federal district courts to

---

[9]     In so asserting, the Supreme Court indicated that it found persuasive the reasoning of four decisions from the circuit courts of appeal adopting a categorical approach. *Taylor*, 495 U.S. at 600. However, every one of those decisions supported its adoption of the categorical approach by pointing to the ACCA's legislative history, the rule of lenity, and other practical considerations— not one of them held or even suggested that anything in the text of the statute itself supported adopting a categorical method. See *United States v. Chatman*, 869 F.2d 525, 529-30 (9th Cir. 1989); *United States v. Headspeth*, 852 F.2d 753, 758-59 (4th Cir. 1988); *United States v. Vidaure*, 861 F.2d 1337, 1340 (5th Cir. 1988); *United States v. Sherbondy*, 865 F.2d 996, 1006-10 (9th Cir. 1988).

conduct a mini-trial to establish what conduct was involved in the defendant's prior offenses, presenting both evidentiary concerns and potentially implicating the defendant's right to a jury trial under the Sixth Amendment. *Id*. at 601-02.  In the end, the Supreme Court concluded that a categorical approach was necessary because "the practical difficulties and potential unfairness of a factual approach are daunting." *Taylor*, 495 U.S. at 601.

The foregoing indicates that while the Supreme Court could point to a weak textual basis for its approach, its holding was grounded almost entirely in practical considerations. *Cf. Shepard*, 544 U.S. at 20 ("The *Taylor* Court drew a pragmatic conclusion about the best way to identify generic convictions in jury cases, while respecting Congress's adoption of a categorical criterion that avoids subsequent evidentiary enquiries into the factual basis for the earlier conviction."); *James v. United States*, 515 U.S. 192, 213-14 (2007) (holding that the categorical approach did not constitute "judicial fact finding" and hence did not violate a defendant's Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000)); *Chambers*, 555 U.S. at 132-33 (2009) (Alito, J., concurring) (stating that in *Taylor*, "we held that sentencing judges should apply a 'categorical approach' to determine whether an underlying state offense meets the 'generic' definition of burglary that this Court—not Congress—created.  The Court justified its decision with a 10–page discussion of ACCA's purpose and legislative history, and explained that its conclusion was necessary to undo 'an inadvertent casualty [in ACCA's] complex drafting process[.]'") (citations omitted).

The grounds for characterizing *Taylor*, and its progeny in *Descamps* and *Mathis*, as cases of statutory interpretation are weak at best, insofar as they discuss the

categorical approach.[10]   But that foundation crumbles when, as in Watford's case, the categorical approach is applied to cases enhanced under the Sentencing Guidelines rather than under the ACCA.  As a threshold matter, the Supreme Court has never applied the categorical approach to a career offender enhancement under § 4B1.1, nor has it expressly or impliedly endorsed doing so.  In addition, the Sentencing Guidelines are not a statute, hence the method of applying the categorical approach to them cannot be said to be a matter of "statutory" interpretation.  True, the Sentencing Commission was created by an Act of Congress and charged with "establish[ing] sentencing policies and practices for the Federal criminal justice system."  28 U.S.C. § 991; *Mistretta v. United States*, 488 U.S. 361, 367-70 (1989).  But it well-established that "the Sentencing Guidelines are not laws in the sense that penal statutes are."  *United States v. Dawn*, 129 F.3d 878, 883 n.8 (7th Cir.1997); *Scott v. United States*, 997 F.2d 340, 341 (7th Cir.1993) (concluding that sentencing guidelines are not "laws" within the meaning of § 2255).  See also *United States v. Ramirez*, 708 F.3d 295, 301 (1st Cir. 2013) ("*Taylor* involved a question of congressional intent, not the [Sentencing] Commission's intent, and did not mandate the Commission restrict the definition of 'burglary of a dwelling,' based on *Taylor*'s definition of 'generic burglary' under the ACCA.")

As other courts have noted, a more expansive reading of the scope of the savings clause would unquestionably have the effect, intended or not, of undermining the purpose and effectiveness of § 2255, not only as originally enacted but as intentionally restricted by Congress through passage of AEDPA.  *See Wright v. Spaulding*, 939 F.3d 695, 707-

---

[10]      Indeed, the federal appellate courts so characterizing those decisions have done so entirely without explanation or justification, simply stating as a given that *Descamps* and *Mathis* are cases of statutory interpretation.

08 (6th Cir. 2019) (Thapar, J., concurring); *Prost*, 636 F.3d at 586-87; *McCarthan*, 851 F.3d at 1090-91; *Chazen v. Marske*, 938 F.3d 851, 863 (7th Cir. 2019) (Barrett, J., concurring) ("At this point, our definition of 'inadequacy' and 'ineffectiveness' under § 2255(e) undermines the limits that § 2255(h) imposes on second or successive motions.  Our patch for statutory cases has grown larger than the hole we identified in the statute.").  Shortly after the original enactment of § 2255, Supreme Court Justice Robert H. Jackson presaged such concerns nearly seventy years ago, when he wrote:

> The fact that the substantive law of due process is and probably must remain so vague and unsettled as to invite farfetched or border-line petitions makes it important to adhere to procedures which enable courts readily to distinguish a probable constitutional grievance from a convict's mere gamble on persuading some indulgent judge to let him out of jail.  Instead, this Court has sanctioned progressive trivialization of the writ until floods of stale, frivolous and repetitious petitions inundate the docket of the lower courts and swell our own.  Judged by our own disposition of habeas corpus matters, they have, as a class, become peculiarly undeserving.  It must prejudice the occasional meritorious application to be buried in a flood of worthless ones. He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search.  Nor is it any answer to say that few of these petitions in any court really result in the discharge of the petitioner.  That is the condemnation of the procedure which has encouraged frivolous cases.

*Brown v. Allen*, 344 U.S. 443, 536-37 (1953) (Jackson, J., concurring in the result).  For these reasons, the Court adheres to its prior conclusion that neither *Descamps* nor *Mathis* can be fairly read to constitute cases of statutory interpretation as required to properly invoke the savings clause to challenge the prior enhancement of a sentence.

## B.

Having expounded upon the Court's prior ruling regarding the cognizability of Watford's claims in a § 2241 proceeding, the Court turns to its second task: determining

under *Hill* and *Wright* whether Watford can establish on the merits that his prior convictions are not "crimes of violence" for purposes of § 4B1.1.

### 1.

Even assuming as a general matter that claims under *Descamps* and *Mathis* may be pursued under § 2241, *Wright* establishes that Watford's arguments do not properly implicate this Court's habeas authority under the savings clause. A prisoner may invoke the savings clause found in § 2255(e) to seek habeas relief under § 2241 by asserting a claim that she is "actually innocent." *Martin*, 319 F.3d at 804. If the prisoner challenges the validity of her underlying federal conviction, she must show that after her conviction became final, the United States Supreme Court issued a retroactively applicable decision re-interpreting the substantive terms of the criminal statute under which she was convicted in a manner that establishes that her conduct did not violate the statute. *Wooten*, 677 F.3d at 307-08. Alternatively, if the prisoner challenges the validity of the enhancement of her federal sentence, she must point to a retroactively applicable Supreme Court decision which establishes that—as a matter of statutory interpretation— a prior conviction used to enhance her federal sentence no longer qualifies as a valid predicate offense. *Hill*, 836 F.3d at 595, 599-600.[11] The petitioner must also show that

---

[11] As the Sixth Circuit correctly noted in *Wright*, the question of whether a particular substantive Supreme Court opinion applies "retroactively" in a § 2241 petition is not governed in any way by the rule announced by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989). *Wright*, 939 F.3d at 705 n.7. The same therefore necessarily also holds true of *Teague's* progeniture in *Whorton v. Bockting*, 549 U.S. 406 (2007). In support of this conclusion the Sixth Circuit in *Wright* pointed to a concurring opinion in *Chazen v. Marske*, 938 F.3d 851, 864-66 (7th Cir. 2019) (Barrett, J., concurring). Indeed, the Supreme Court long ago expressly noted that *Teague* and its successors do not supply the proper test to determine which of its cases apply retroactively in this context. *Bousley v. United States*, 523 U.S. 614, 620 (1998) (holding that "because *Teague* by its terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress.")

she "had no prior reasonable opportunity" to assert this argument for relief.  *Wright*, 939 F.3d at 703.  And the case relied upon by the petitioner must have been decided by the Supreme Court; a decision from a United States Court of Appeals will not suffice.  *Hueso v. Barnhart*, 948 F.3d 324, 326 (6th Cir. 2020).

As the Court previously held, Watford's overbreadth claims fail to satisfy these criteria because (at a minimum) they are based upon *Taylor*, not *Descamps* or *Mathis*. (Doc. # 15 at 5).  This is because "Watford does not allege the trial court impermissibly used the modified categorical approach to analyze his prior offenses, and hence makes no claim actually grounded in *Mathis* or *Descamps* at all."  *Id*.  Although Watford cites to these Supreme Court decisions, his arguments do not actually rest upon them.  Those decisions explain or clarify application of the "categorical" or "modified categorical" approaches used to determine whether a prior criminal conviction is for a "violent felony" under 18 U.S.C. § 924(e)(2)(B).  But Watford does not contend that the trial court actually committed an error of a kind revealed by *Mathis*: he does not allege that the court incorrectly determined that the Florida and Pennsylvania statutes under which he committed his offenses were divisible, or that the trial court improperly consulted *Shepard* materials to decide whether his prior convictions were for violent felonies.  *See* (Docs. # 1 at 5, # 11 at 5, and # 13 at 5).[12]  Absent a viable claim of such trial error supported by the

---

[12]     In his appeal Watford argued (for the first time) that the Florida burglary statute is indivisible and therefore reference to *Shepard* materials would be inappropriate.  (Doc. # 30 (on appeal) at 46-47).  Watford notably does not re-assert that argument on remand before this Court. *See* (Doc. # 43).  In any event, before *Mathis* was decided, *Taylor* itself noted that a particular state statute may be indivisible or divisible.  *Taylor*, 495 U.S. at 601.  Therefore the only "new" argument that *Mathis* "enabled" is that a trial court misunderstands the distinction between indivisible and divisible statutes if it incorrectly treats a statute which defines a single offense that may be committed by one of several different factual means as one which creates several distinct offenses.  *Mathis*, 136 S. Ct. at 2251-52.  But Watford has **still** never claimed, despite six clear opportunities to do so, that the federal district court in Indiana *actually* ran afoul of *Mathis* by

record,[13] Watford's claim is not based upon *Descamps* or *Mathis*, and he fails to satisfy the gatekeeping requirements of *Hill* and *Wright*.   *Cf. Chazen*, 938 F.3d at 864 n.3 (concurring opinion) ("To be clear, while Chazen's petition invokes [*Mathis*] . . . *Mathis* is not the case that justifies granting him relief . . . . because he does not complain that the sentencing court's decision to count his burglary conviction was the result of the error *Mathis* identifies—looking at the facts underlying his crime to conclude that he committed it by a violent means.").

Instead, Watford—in his original and amended petitions, on appeal, and upon remand—continues to argue **only** that the state statutes under which he was convicted criminalize a "broader swath of conduct" than the generic offense.  *See id.*; (Docs. # 30 (on appeal) at 18, 40-47; 47-51 and # 43 at 9-13).  This is a quintessential overbreadth argument under *Taylor*, a decision handed down nearly a decade before Watford's sentence was imposed.  Watford therefore cannot show that he had "no prior reasonable opportunity" to assert these arguments for relief.  *Wright*, 939 F.3d at 705 ("[A] claim for habeas relief is more than the talismanic force of a new case name.  A new case matters only, if at all, because of the new legal arguments it makes available.").  *Accord Potter v.*

---

making this mistake.  Even on appeal Watford did not, in substance, argue that *Mathis* error had occurred.  Instead his divisibility claim, like his overbreadth claim, arises under *Taylor*, and it is not one that he has "had no prior reasonable opportunity" to assert.  *Wright*, 939 F.3d at 703.

Finally, Watford has never argued, not even on appeal to the Sixth Circuit, that Pennsylvania's assault statute is indivisible.  *See* (Doc. # 30 (on appeal) at 47-51).  That alone makes plain that his argument is merely that the assault statute is overbroad under *Taylor*, not that under *Descamps* or *Mathis* the trial court improperly analyzed his prior offenses using the modified categorical approach.

[13]    Even if Watford had made such a claim, the trial record refutes it.  The Indiana trial court entered a Sentencing Memorandum on February 17, 1998, in which it relied solely upon the Florida and Pennsylvania criminal statutes, not extrinsic documents of the kind delineated in *Shepard*, to conclude that his prior offenses qualified as felony crimes of violence.  See (Doc. # 29-2 (on appeal) at 4-5).

*United States*, 887 F.3d 785, 787-88 (6th Cir. 2018) (requiring § 2255 petitioner purportedly asserting a claim under *Johnson II* to establish that trial court actually applied the since-invalidated residual clause when it imposed sentence); *Davis*, 751 F.3d at 773 (implicitly finding that claim under *Descamps* challenging appropriate scope of documents used by trial court to determine sentence based upon prior crimes was merely an application of *Shepard*).

Because Watford's overbreadth arguments are squarely based upon *Taylor*, he was obligated to make them to the trial court at the sentencing hearing, on direct appeal, or in an initial motion under § 2255. He may not now assert them in a habeas corpus petition under § 2241. *Wright*, 939 F.3d at 703 (holding that to access § 2241 via the savings clause "the prisoner must also show that binding adverse precedent (or some greater obstacle) left him with 'no reasonable opportunity' to make his argument [under new Supreme Court precedent] any earlier"). As discussed, the Florida and Pennsylvania statutes under which Watford was convicted are divisible. Accordingly, just as in the *Wright* case, *Mathis* and its teachings have no work to do, and no claim based upon that decision can be plausibly asserted in a § 2241 petition. See *Wright*, 939 F.3d at 706 & n.8 (concluding that petitioner's § 2241 claim was not actually based upon *Mathis* where the predicate offense he challenged was set forth in a state statute that was divisible and federal circuit law correctly so held in conformity with *Mathis*).

### 2.

Even if Watford's overbreadth claims under *Taylor* could be pursued in this § 2241 proceeding, the district court in Indiana properly concluded that Watford's 1990 Florida conviction in Case No. F90-23427 for burglary of a dwelling pursuant to Fla. Stat.

§ 810.02(3) (1990)[14] qualifies as a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a)(2) (Nov. 1, 1997).  That career offender subsection includes both the four enumerated offenses—"burglary of a dwelling, arson, or extortion, involves use of explosives"—and a residual clause covering offenses that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another."  *Id*.

When Watford committed his burglary on June 9, 1990, *see* (Doc. # 41 at 11-12), the pertinent Florida statute defined burglary as "entering or remaining in a structure or a conveyance with intent to commit an offense therein."  Fla. Stat. § 810.02(1) (1987).  At that time, § 810.02(3) established that such a burglary would qualify as a second degree felony, as Watford's did, "[i]f . . . the structure or conveyance entered is a dwelling or there is a human being in the structure or conveyance at the time the offender entered or remained in the structure or conveyance."  *See Howard v. State*, 642 So. 2d 77, 78 (Fla. App. 1994).[15]

---

[14]     For information on Watford's prior convictions, *see* (Doc. # 29-2 (on appeal) at 31-34, 38, 40, 43).  Information regarding Watford's criminal proceedings in Florida may also be reviewed online at the website of the Miami-Dade County Clerk of Courts.  See https://www2.miamidadeclerk.com/cjis/casesearch.aspx.  The Court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009), including "proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969). Such records and information on government websites are self-authenticating.  *See* Fed. R. Evid. 902(5); *Qiu Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013) ("A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself.").

[15]     In comparison, § 810.02(2) of the Florida statute provides that a burglary can only qualify as a first degree felony if the defendant entered the structure while armed, or assaulted or battered a person while within it.  *See Bradley v. State*, 378 So. 2d 870, 872-73 (Fla. App. 1979).  The distinction between these types of burglary offense matters because Florida imposes different sentences for first, second, and third degree burglaries.  *See* Fl. Stat. § 775.082(3)(b), (c), (d) (1989); *Hammond v. State*, 608 So. 2d 127, 128 (Fla. App. 1992).  Because the statute sets out several different punishments depending on the underlying elements of the offense, Florida's burglary statute is divisible.  *See Chambers*, 555 U.S. at 126-27 (noting that failure-to-report and escape, set forth in the same section of the Illinois statute, are distinct offenses because Illinois

Of course, the statutory definitions of both "structure" in § 810.011(1) (1976) and "dwelling" in § 810.011(2) (1982) extend to include "the curtilage thereof." *State v. Hamilton*, 660 So.2d 1038, 1040 (Fla. 1995).  By expanding the locational element of burglary to include the curtilage, the Supreme Court long ago held that Florida burglary is more expansive than the generic offense, and hence cannot qualify as a predicate under the enumerated offense clause.  *James*, 550 U.S. at 212.  But the Supreme Court nonetheless held that a Florida burglary conviction qualifies as a violent felony under the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), which is worded identically to § 4B1.2(a)(2)'s residual clause.  *Id.* at 212-13.[16]

Predictably, in light of *James* numerous courts have reached the conclusion that Florida burglary constitutes a crime of violence under the functionally-identical terms of the residual clause of § 4B1.2(a)(2).  *See United States v. Ramirez*, 708 F.3d 295, 305-

---

treats each as constituting a separate class of felony); *Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements.").

The Eleventh Circuit has held otherwise, but in doing so commits an evident logical error by conflating the threshold divisibility inquiry with the definitional inquiry intrinsic to *Taylor's* overbreadth analysis.  *Cf. In re: Adams*, 825 F.3d 1283, 1285 (11th Cir. 2016).  Put another way, the Eleventh Circuit creates out of whole cloth entirely new state law offenses (such as "burglary of the curtilage") that Florida's burglary statute does not. The Eleventh Circuit, having thus artificially subdivided the statute in a manner inconsistent with the organizational structure of the statute itself and with repeated interpretations of it by the Florida Supreme Court, errs by concluding that Florida's burglary statute is indivisible.   This Court, beyond noting its disagreement with not only with the Eleventh Circuit's conclusions but with its mode of analysis, leaves the broader question aside because the divisibility determination is neither necessary to or dispositive of Watford's petition.

[16]    *Johnson II* invalidated the residual clause of the ACCA at issue in *James*, but the residual clause of the Sentencing Guidelines survived intact.  *See Beckles v. United States*, 137 S. Ct. 886 (2017) (holding that the Guidelines are not laws subject to a vagueness challenge); *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996) (same).  *James* therefore "remains good law for purposes of analyzing the residual clause of the Guidelines." *United States v. Morris*, 885 F.3d 405, 412 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 269 (2018).

07 (1st Cir. 2013) (holding that a Florida conviction for burglary of a structure is a crime of violence under § 4B1.2(a)(2)'s residual clause); *United States v. Matchett*, 802 F.3d 1185, 1196-97 (11th Cir. 2015) (same); *United States v. Jacques*, 717 F. App'x 934, 937 (11th Cir. 2017) ("Regardless of whether Florida burglary of an occupied dwelling is a crime of violence under the enumerated clause, it is so under the residual clause."). *See also United States v. Phillips*, 752 F.3d 1047, 1051 (6th Cir. 2014) (same under the ACCA's since-invalidated residual clause).

Watford, unable to assert a credible argument that his Florida burglary conviction does not satisfy the residual clause, argues instead that the warden is constrained to argue (and only argue) that his prior offense qualifies as an enumerated offense (when it plainly does not, per *James*). This is so, Watford contends, because five years ago, when responding to one of his many earlier collateral attacks, the United States made a "judicially binding admission" that his burglary conviction was an enumerated offense. (Doc. # 43 at 14-15).

If that prefatory paragraph takes some parsing, it is only because Watford's convoluted argument itself requires some unraveling. To wit: in 2015, Watford sought permission from the Seventh Circuit to file a second or successive § 2255 motion so that he could argue that *Johnson II*'s invalidation of the ACCA's residual clause likewise invalidated § 4B1.2(a)(2)'s residual clause, thus rendering him no longer a career offender. *In re: John J. Watford*, No. 15-2918 (7th Cir. 2015) (Doc. # 1 therein). In response, the United States argued that his motion should be denied because (among other things) Watford's burglary conviction qualified as "the enumerated offense burglary of a dwelling." (Doc. # 3-1 therein at 1). The United States further stated that "Watford

24

cannot show that any of his prior offenses used to classify him as a career offender involved the residual clause . . . the district court found that Watford's Florida conviction qualified because it was 'burglary of a dwelling,' which is one of the four enumerated crimes in U.S.S.G. § 4B1.2(a)(2)."  *Id*. at 5.

Yet, the United States' prior assertion regarding the Indiana district court's basis for applying the career offender enhancement is not supported by the record.  The United States referred only to the third page of the district court's 1997 Sentencing Memorandum.  See (Doc. # 3-2 therein).  But in that memorandum, the district court stated only that:

> In 1990, [Watford] was convicted in Dade County, Florida of burglary of a dwelling, which is a crime of violence for purposes of the career offender provision.  U.S.S.G. § 4B1.2(a)(2).

The district court's reference to "burglary of a dwelling" in that sentence clearly referred to Watford's Florida offense identified immediately before in the text:  "[Watford] was convicted in Dade County, Florida of burglary of a dwelling."  And nothing in the district court's reference to § 4B1.2(a)(2)—or anything else in its Sentencing Memorandum— does anything to clarify whether it believed that the Florida conviction qualified as a "crime of violence" as an enumerated offense or under the residual clause:  *both* categories are delineated in the same subsection referenced by the district court, § 4B1.2(a)(2).  In truth, the district court gave no clear indication in its memorandum under which provision it believed Watford's burglary conviction qualified as a crime of violence.  This is not surprising:  the PSR took no position on the question, *see* (Doc. # 41 at 9, 13), and neither the prosecution nor defense counsel questioned Watford's status as a career offender during his sentencing proceedings.

Nonetheless, the Seventh Circuit uncritically accepted the United States' characterization of the trial court's basis for applying the career offender enhancement. (Doc. # 6 therein at 1) ("Watford was not sentenced under the residual clause of the career-offender guideline."). It then reached a legal conclusion that was self-evidently wrong in light of *James*. *Id*. ("[Watford] was previously convicted of burglary of a dwelling in Florida, which is an enumerated offense under U.S.S.G. § 4B1.2(a)(2)."). But whether the United States (or the Seventh Circuit) was right or wrong in those proceedings is of no moment for the purpose of determining whether the respondent herein is bound in the manner Watford suggests. As a matter of fact and law, he is not.

As a matter of fact, the United States in that earlier proceeding stated only what it believed to be the Indiana trial judge's basis for finding that the prior offense qualified as a crime of violence.[17] The United States did not assert that its *own* legal position was that the enumerated offense clause was the one and only provision under which Watford's burglary conviction could qualify as such. *See* (Doc. # 3-1 therein).

As a matter of law, the prior statement fails to satisfy any of the requirements to be binding upon the warden here. A "judicial admission or stipulation" is an "express waiver made . . . by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 9 J. Wigmore, EVIDENCE § 2588, p. 821 (J. Chadbourn rev.1981)) (emphasis deleted). First, the prior statement constituted a conclusion of law, not a statement of fact, and

---

[17]    Even if the trial court had so believed, it would not prevent another court upon further review from reaching its own conclusion upon different grounds. *See United States v. Goodrich*, 709 F. App'x 798, 798-99 (6th Cir. 2017) (affirming sentence based on residual clause despite the fact that neither the presentence report, the parties, nor the district court considered it at resentencing); *United States v. Jackson*, 901 F.3d 706, 707 (6th Cir. 2018) (same).

therefore does not qualify as a judicial admission.  *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 394 (6th Cir. 2007) (*citing MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997)); *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) ("The scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof, and does not include counsel's statement of his conception of the legal theory of a case.").

Second, the United States at most asserted that Watford's predicate offense qualified as an enumerated offense, not that it did not or could not qualify under the residual clause.  Because the United States did not concede that the second possibility was not a viable option, its statement could not qualify as an admission on the latter point. *MacDonald*, 110 F.3d at 340 ("Because of their binding consequences, judicial admissions generally arise only from deliberate voluntarily waivers that expressly concede . . . an alleged fact . . . .") (*quoting United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975)).

Third, the respondent here was not a party to the prior proceeding and is not bound by the government's position in that case.  *MacDonald*, 110 F.3d at 341.  Fourth and finally, judicial admissions are not binding in a proceeding different from the one in which they were made, and hence do not control here.  *Cadle Co. II v. Gasbusters Prod. I Ltd. P'ship*, 441 F. App'x 310, 312, 315 (6th Cir. 2011) (holding that it was error to treat statements from prior proceedings as judicial admissions, noting that "'[p]leadings in a prior case may be used as evidentiary admissions,'" but that "[j]udicial admissions, on the other hand, are formal admissions in the pleadings *of a present action*") (emphasis added and citations omitted); *In re Kattouah*, 452 B.R. 604, 608 (E.D. Mich. 2011) (*citing Dixie*

*Sand & Gravel Corp. v. Holland*, 255 F.2d 304, 310 (6th Cir. 1958) ("Allegations in pleadings in other actions are admissible in evidence as admissions, but are not conclusive, and should be considered in connection with any other evidence which may be offered in explanation.")).  The foregoing establishes that the statements made in the earlier separate proceeding do not bind the respondent in this case, and the Court finds no basis to preclude the warden from arguing that Watford's Florida conviction qualifies under the residual clause.

### 3.

The federal sentencing court was also correct in finding that Watford's 1994 Pennsylvania conviction in Case No. CC-94-13489 for aggravated assault with a deadly weapon pursuant to 18 Pa. Cons. Stat. § 2702(a)(4) qualifies as a "crime of violence" under the "use of force" clause found in U.S.S.G. § 4B1.2(a)(1).[18]

Watford committed the aggravated assault on October 1, 1994 when he beat his victim with a board and then tried to throw him off a bridge.  (Doc. # 39-2 at 9).  At the time of his offense, the 1990 version of § 2702(a) set forth five subsections establishing various species of aggravated assault, including conduct that attempts to or actually inflicts: (1) serious bodily injury by conduct manifesting extreme indifference to the value

---

[18]     Watford makes no argument at all to this Court that his aggravated assault conviction was not a valid predicate offense, mentioning it only in passing at the conclusion of his brief.   *See* (Doc # 43 at 15).  He has therefore abandoned any claim that it was not.  *Cf. Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("A court cannot create a claim which [a plaintiff] has not spelled out in his pleading."); *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009) (Sutton, J., dissenting) ("No doubt, we expect less of pro se litigants than we do of counseled litigants—and appropriately so. But those modest expectations are not non-existent. '[P]ro se parties must still brief the issues advanced with some effort at developed argumentation.'") (*quoting Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003)).   The Court therefore addresses the argument Watford made on appeal regarding this offense solely for the sake of completeness should the Sixth Circuit conclude that the claim is not entirely waived.

of human life; (2) serious bodily injury upon a police, probation, or transportation officer or a firefighter; (3) bodily injury upon a police, probation, or transportation officer or a firefighter; (4) bodily injury with a deadly weapon; or (5) bodily injury upon a school teacher or board member.  Section 2702(b) provides that first two of those offenses qualify as first degree felonies under Pennsylvania law, while the last three constitute second degree felonies.  18 Pa. Cons. Stat. § 2702 (Feb. 2, 1990).

Watford was originally charged under § 2702(a)(1), but the Pennsylvania judgment reflects that the charge was later amended to one under § 2702(a)(4).  (Doc. # 39-2 at 1-5).[19]  That historical fact alone dispenses of the one argument Watford made on appeal, where he challenged the viability of this predicate offense but only "if of the (a)(1) variant." *See* (Doc. # 30 (on appeal) at 37, 40, 47).  Indeed, Watford all but conceded on appeal that a conviction under § 2702(a)(4) qualifies as a crime of violence under the use of force clause.  *Id*. at 49 n.16.

The Pennsylvania statute is divisible because it imposes different penalties for violating different subsections of the act, *Mathis*, 136 S. Ct. at 2256, and courts have consistently so found.  *Cf. United States v. Ramos*, 892 F.3d 599, 608-09 (3d Cir. 2018); *United States v. Cruz-Campos*, 551 F. App'x 251, 252 (5th Cir. 2014) (affirming conclusion that conviction under § 2702(a)(4) was one for a "crime of violence," noting that "[w]hen, as here, a statute has disjunctive subsections, we may apply a modified categorical approach to determine the applicable subsection of conviction") (citation omitted); *see also Henderson v. Grondolsky*, 370 F. Supp. 3d 186, 198 (D. Mass. 2019)

---

[19]    Information regarding Watford's criminal proceedings in Pennsylvania may also be reviewed online at the web portal for the Unified Judicial System of Pennsylvania.  *See* https://ujsportal.pacourts.us/DocketSheets/CP.aspx.

(collecting cases).   Thus, as discussed above with respect to Watford's burglary conviction, he cannot and does not actually make a claim grounded in *Mathis* or *Descamps* because he does not argue that the trial court improperly treated the Pennsylvania aggravated assault statute as divisible.  *Mathis* therefore does not enable Watford to make any new argument which he may use to open the door to seek relief under § 2241.  *Wright*, 939 F.3d at 706 & n.8.

Finally, even if Watford could claim in this proceeding that his Pennsylvania aggravated assault conviction is overbroad, that claim would be without merit.  Under the applicable "use of force" clause, a prior conviction qualifies as a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another."   U.S.S.G. § 4B1.2(a)(1) (Nov. 1, 1997).   The Pennsylvania statute satisfies that definition because "[t]aken together, the 'minimum conduct' sufficient to sustain a § 2702(a)(4) conviction is an attempt to cause another person to experience substantial pain with a device capable of causing serious bodily injury.  As a practical and legal matter, an offender can do so only by attempting to use physical force against another person."  *Ramos*, 892 F.3d at 611; *see also United States v. Gorny*, 655 F. App'x 920, 925 (3d Cir. 2016) (same).

To the extent Watford contends that the statute is overbroad because, he claims, § 2702(a) only requires a mens rea of recklessness to violate the statute, he is simply incorrect.   *See United States v. Lewis*, 720 F. App'x 111, 117 (3d Cir. 2018), *cert. denied,* 138 S. Ct. 2013 (2018) (noting that § 2702(a)(4) "explicitly requires intent or knowledge, thereby satisfying the force clause's required mental state.").   In any event, the use of force clause does not require the predicate offense to proscribe only intentional

30

conduct.  *See Hawkins v. Barnhart*, No. 6: 18-CV-115-DLB, 2019 WL 2929513, at *8-9 (E.D. Ky. 2019) (discussing application of *Voisine v. United States*, __ U.S. __, 136 S. Ct. 2272, 195 L.Ed.2d 736 (2016)); *United States v. Verwiebe*, 874 F.3d 258, 261-62 (6th Cir. 2017) ("A defendant uses physical force whenever his volitional act sets into motion a series of events that results in the application of a 'force capable of causing physical pain or injury to another person' . . . [under  *Voisine*], the 'use of physical force' requires volitional but not intentional or knowing conduct.").

Thus, even when the modified categorical approach is applied (which is not necessary here), "[a] prior conviction for second-degree aggravated assault with a deadly weapon, in violation of 18 Pa. C.S. § 2702(a)(4), is categorically a crime of violence." *Ramos*, 892 F.3d at 603.  The federal district court in Indiana therefore did not err in concluding that Watford's conviction for aggravated assault was one for a crime of violence, and that he therefore qualified as a career offender under the Sentencing Guidelines.

### III.

The American system of habeas corpus, of which § 2241 is but a part, should never be so narrowly construed that the doors to collateral relief should be forever closed to any petitioner who can make a plausible showing that she may be entitled to relief under the law.  But it does mean that § 2241, designed from its inception to be a remedy of last resort, must never be interpreted loosely or the strictures to its application be enforced in a lax manner, lest the writ and the courts charged with its administration be overwhelmed with frivolous or improbable claims.  As the Supreme Court previously held:

> Perpetual disrespect for the finality of convictions disparages the entire
> criminal justice system.  A procedural system which permits an endless

repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of underlying substantive commands. . . . There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility.

*McCleskey v. Zant*, 499 U.S. 467, 492 (1991) (quotation marks omitted).  This admonition applies to no litigant more so than Watford:  since his conviction, he has filed two dozen or more collateral attacks upon his conviction, sentence, or both, without success.  *See United States v. Watford*, No. 16-1404 (7th Cir. Mar. 15, 2016).  For all of the reasons set forth above, the petition must be denied.

Accordingly, **IT IS ORDERED** as follows:

(1)     John Jose Watford's original and amended petitions for a writ of habeas corpus (Docs. # 1, # 11, and # 13) are **DENIED**;

(2)     Watford's motions to take judicial notice (Doc. # 48) and to transfer venue (Doc. # 50) are **DENIED AS MOOT**;

(3)     The Court will enter an appropriate **Judgment**; and

(4)     This matter is **STRICKEN** from the docket.

This 30th day of August, 2020.



**Signed By:**

**David L. Bunning**   *DB*

**United States District Judge**

J:\DATA\ORDERS\PSO Orders\6-17-322 Memorandum.docx